## ACUERDO Y RELEVO GENERAL

### COMPARECEN

**DE LA PRIMERA PARTE:** El Sr. Carlos Kelly (en adelante "Kelly" ó "el empleado") y la Sa. Emilia Castro Castillo (en adelante "la cónyuge"), mayores de edad, casados entre sí y con residencia ubicada en Mayagüez, PR; y la Sociedad Legal de Gananciales compuesta por ambos, debidamente representada por ambos cónyuges, en adelante referidos en conjunto como "Kelly y su cónyuge".

**DE LA SEGUNDA PARTE:** Cervecera de Puerto Rico, Inc., una corporación autorizada para hacer negocios en Puerto Rico, en adelante denominada como "LA COMPAÑÍA", representada en el presente acto por Maribel Montes, Gerente de Finanzas.

Por este medio libre y voluntariamente:

### EXPONEN

**POR CUANTO:** La relación de patrono-empleado entre Kelly y la COMPAÑÍA terminó el 9 de febrero de 2015.

**POR CUANTO:** Con el sólo propósito de evitar cualesquiera controversias que pudiesen surgir de la relación patrono-empleado entre la COMPAÑÍA y Kelly y de la terminación de esa relación, las partes han decidido disponer de esas posibles controversias por medio de este Acuerdo.

**POR TANTO:** En consideración a los acuerdos y prestaciones, que más adelante se detallan, las partes libre y voluntariamente:

### DISPONEN



1. **Terminación de la Relación.** Kelly reconoce y acepta que su relación de empleo con la COMPAÑÍA terminó por justa causa.

2. **No Tramitación de Reclamaciones y Desistimiento Voluntario.** Kelly representa que no ha gestionado acción, reclamación, querella, demanda o procedimiento alguno en contra de la COMPAÑÍA ante un foro local o federal. No obstante ello, Kelly se compromete y obliga a gestionar el desistimiento con perjuicio de cualquier acción o reclamación judicial o administrativa que, contrario a sus representaciones, haya presentado en contra de la COMPAÑÍA; y a no tramitar, promover o participar en acción judicial o administrativa alguna en contra de la COMPAÑÍA ante cualquier foro local o federal basado en hechos ocurridos con anterioridad a la firma de este Acuerdo, excepto según disponga en contrario la ley ADEA y en ese caso renuncia a cualquier remedio bajo dicha ley.

**Contraprestación.** En consideración a la firma y cumplimiento por Kelly y su cónyuge de los términos, condiciones y obligaciones contenidos en este Acuerdo, del

1 de 10

desistimiento con perjuicio de todo procedimiento que Kelly o su cónyuge hayan presentado en contra de la COMPAÑÍA según se dispone en la Sección 2 de este Acuerdo y del más total y completo relevo de las causas de acción enumeradas en las Secciones 5 a 5.3 este Acuerdo, la Compañía acuerda pagar a Kelly una vez expirados los 7 días que tiene para revocarlo sin que lo haya revocado:

La suma de $75,000, la cual excede la compensación establecida en la Ley 80, a pesar de que dicha compensación no procede por ser la terminación de empleo por justa causa. A esta cantidad de dinero no se le hará la retención en el origen correspondiente a contribuciones sobre ingresos. No obstante, Kelly y su cónyuge, están conscientes que esta cantidad se informará al Departamento de Hacienda de Puerto Rico y al Internal Revenue Service (IRS) y la responsabilidad contributiva, si alguna, será de cargo de Kelly y su cónyuge exclusivamente. Kelly y su cónyuge reconocen que la Compañía o sus asesores no les han asesorado sobre cuestiones contributivas o de otra índole sino que éstos se han asesorado con sus propios asesores. Kelly y su cónyuge asumen toda la responsabilidad relacionada a la no realización de deducciones y al pago de cualquier contribución que pudiera imponérsele, así como cualquier recargo, penalidad y/o interés. Kelly y su cónyuge acuerdan que reembolsarán a la Compañía por cualquier responsabilidad que le imponga el Departamento de Hacienda de Puerto Rico, incluyendo cualquier recargo, penalidad y/o intereses, por la no retención en el origen de contribuciones y expresamente relevan a las Partes Relevadas (según definidas en este documento) de toda responsabilidad respecto al pago de la cantidad acordada y a la forma en que ésta sea reportada al Departamento de Hacienda y al IRS. A la suma antes mencionada se le hará la retención del 7.65% por concepto de seguro social y medicare.



Kelly reconoce y admite que la suma de dinero antes mencionada excede la cantidad que pudiese tener derecho Kelly por concepto del remedio que concede la Ley Núm. 80. Por lo tanto, Kelly reconoce y admite que los remedios que le pudiese conceder la Ley Núm. 80 se le han satisfecho en su totalidad. Kelly reconoce, además, que por razón de este Acuerdo y el pago de la suma de dinero antes mencionada, no tiene derecho a recibir compensación alguna bajo las disposiciones de la Ley Núm. 80 y que si en un futuro algún tribunal, agencia administrativa u otro organismo con jurisdicción ordenara a la Compañía a pagarle cualquier compensación por concepto de despido a tenor con las disposiciones de la Ley 80 del 30 de mayo de 1976, según enmendada, la cantidad recibida como parte de este Acuerdo se atribuirá a y descontará de dicho pago.

Además, si Kelly opta por acogerse a los beneficios de Plan Médico bajo la Ley COBRA, la Compañía pagara los primeros seis meses de cubierta.

4. **No Admisión de Violación o Responsabilidad.** Las partes reconocen y aceptan que el pago de la suma de dinero, a ser efectuada por la COMPAÑÍA a favor de Kelly no constituye una admisión, aceptación o reconocimiento de la COMPAÑÍA de culpa o responsabilidad alguna o admisión de violación alguna a la Constitución, leyes o reglamentos del Estado Libre Asociado de Puerto Rico o de los Estados Unidos de América, ni violación a

contrato verbal o escrito alguno entre las partes de este Acuerdo. No obstante, en caso de que un tribunal con jurisdicción entienda que la COMPAÑÍA es responsable de alguna violación de ley, la suma de dinero pagada como resultado de este Acuerdo será descontada de las cantidades reclamadas y/o concedidas por el Tribunal.

5. **Relevo de Responsabilidad y Renuncia.** En consideración a los pagos mencionados en el párrafo 3 que antecede, Kelly, su cónyuge y la Sociedad Legal de Gananciales conceden el más total y completo relevo de responsabilidad y renuncia a favor de la COMPAÑÍA, y de toda otra Compañía predecesora, sucesora, subsidiaria, afiliada, matriz o cesionaria, incluyendo a Cervecería India, Inc. (en este documento referidas como "las Corporaciones"); de los accionistas, directores, administradores, gerentes, empleados de las entidades antes mencionadas, de los cónyuges, familiares o parientes de estos, así como de las sociedades económicas o conyugales que estos constituyen y de todas aquellas empresas, negocios o entidades que de alguna forma estén relacionadas con las corporaciones, incluyendo sus aseguradores, garantizadores, compañías tenedoras de acciones, concesionarios, fiadores, y/o representantes, el Plan de Retiro de la Compañía, así como los Fiduciarios, Administradores y miembros del Comité de Pensiones (en adelante todos ellos referidos como las "Partes Relevadas"); de cualquier reclamación conocida o desconocida que esté relacionada directa o indirectamente con la relación de empleo entre la COMPAÑÍA y Kelly y de la terminación de dicho empleo. Disponiéndose que Kelly renuncia expresamente a toda y cualquier reclamación y/o remedio que pueda tener en contra de las Partes Relevadas en ley o equidad o responsabilidad contractual o extracontractual y por los fundamentos y las leyes, según enmendadas, mencionadas a continuación: Ley Núm. 80 de 30 de mayo de 1976 (despido injustificado); Worker Adjustment and Retraining Notification Act (WARN) (despido masivos de empleados); Ley Núm. 100 de 30 de junio de 1959 (discrimen en el empleo por edad, raza, color, sexo, origen social o nacional, condición social, afiliación política, ideas políticas o religiosas, ser víctima o percibida como víctima de violencia doméstica, agresión sexual o acecho y represalia); discrimen o represalia por matrimonio, maternidad, hostigamiento laboral, orientación sexual e identidad de género ó discrimen genético; Ley Núm. 69 de 6 de julio de 1985 (discrimen en el empleo por razón de sexo); Ley Núm. 17 de 22 de abril de 1988 (hostigamiento sexual y represalia); Title VII of The Civil Rights Act of 1964 (discrimen en el empleo por raza, color, religión, sexo, origen nacional, hostigamiento sexual y represalia); Age Discrimination in Employment Act (ADEA) y el Older Workers Benefit Protection Act (OWBPA) (discrimen en el empleo por edad); Ley Núm. 44 de 2 de julio de 1985 y el Americans with Disabilities Act of 1990 (ADA)( prohíbe el discrimen por impedimentos); Genetic Information Nondiscrimination Act of 2008 (GINA)(discrimen en el empleo por información o condición genética); Ley Núm. 130 de 8 de mayo de 1945 y el Labor Management Relations Act (LMRA)(discrimen sindical); Consolidated Omnibus Budget Reconciliation Act (COBRA)(derecho a continuación de cubierta de plan médico grupal); Employee Retirement Income Security Act of 1974 (ERISA) (reclamaciones relacionados con planes de retiros); Sarbanes Oxley Act of 2002 (represalia); Ley Núm. 16 de 5 de agosto de 1975 y el Occupational Safety and Health Administration (OSHA) (salud, seguridad ocupacional y represalia); Ley

Núm. 115 de 20 de diciembre de 1991 según enmendada (represalia en el empleo por prestar testimonio ante un foro legislativo, administrativo o judicial así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad); Ley Núm. 45 de 18 de abril 1935 (reserva de empleo bajo la licencia por el Fondo de Seguro del Estado); Ley Núm. 139 de 26 de junio de 1968 (reserva de empleo bajo la licencia por SINOT, enfermedad temporal no ocupacional); Ley Núm. 17 de 17 de abril de 1931 (pago de salario y deducciones); Fair Labor Standards Act (FLSA) y el Equal Pay Act of 1963 (pago de salario); Ley Núm. 180 de 27 de julio de 1998 (pago de salario mínimo, licencia por vacaciones y licencia por enfermedad) Ley Núm. 379 de 15 de mayo de 1948 (pago de horas extra y periodo de tomar alimentos); Ley Núm. 289 de 9 de abril de 1946 (pago de horas trabajadas durante el 7mo día consecutivo de trabajo); Ley Núm. 1 de 1 de diciembre de 1989 (en las industrias aplicables a la ley de cierre, provee para el pago de horas trabajadas durante los días domingo y días feriados); Ley Núm. 148 de 30 de junio de 1969 (pago de bono de navidad); Ley Núm. 87 de 26 de junio de 1964, Ley Núm. 281 de 27 de septiembre de 2003 (licencia por servicio de jurado); Ley Núm. 122 de 12 de julio de 1986 (licencia por servir como testigo en casos criminales); Ley Núm. 203 de 14 de diciembre de 2007, Ley Núm. 218 de 28 de agosto de 2003, Ley Núm. 26 de 18 de marzo de 2010 y el Uniformed Services Employment and Reemployment Rights Act (UMERCADO) (licencia por servicio militar, discrimen en el empleo por servicio militar, salario y otros beneficios por ser veterano o pertenecer al servicio activo); Family and Medical Leave Act of 1993 (FMLA) (licencia médico-familiar); Ley Núm. 138 de 26 de junio de 1968 (Ley de Protección Social por Accidentes de Automóviles (ACAA)); Ley Núm. 49 de 27 de junio de 1987 y Ley Núm. 24 de 5 de enero de 2002 (licencias deportivas); Ley de 19 de febrero de 1902, 32 L.P.R.A. §§ 3141-3149 (difamación, libelo y calumnia); Artículos 1802-1810A y 1054-1062 del Código Civil de Puerto Rico (reclamaciones por cualquier daño físico, emocional, económico o patrimonial por culpa o negligencia o por incumplimiento de contrato o cuasicontrato); o por delación ("whistleblower"); bajo la Constitución del Estado Libre Asociado de Puerto Rico o de los Estados Unidos de América (violaciones por derechos constitucionales como el derecho a la intimidad); y cualquier otra reclamación que surja de la Constitución o a las leyes del Estado Libre Asociado de Puerto Rico o de los Estados Unidos de América. Las renuncias y relevos de posibles reclamaciones o causas de acción se extienden también a las que pudiesen haber surgido en la relación de empleo que tuvo Kelly con Cervecera de Puerto Rico ó las corporaciones y la conclusión de la misma.

Las renuncias y relevos antes mencionados incluyen cualquier daño ocurrido luego de la firma de este documento como resultado del efecto continuo de cualquier acto u omisión ocurrido antes de la firma de este documento.

Las renuncias de derechos y reclamaciones hechas en este documento no incluyen aquellas causas de acción que puedan surgir luego de la firma del mismo.

La COMPAÑÍA y las demás Partes Relevadas quedan por este Acuerdo, para siempre exoneradas de todas las reclamaciones, alegaciones, causas de acción,

deudas, controversias, que Kelly pueda tener al presente o pueda haber tenido en el pasado, incluyendo cualquier reclamación de salarios, horas extras, periodo de tomar alimentos y liquidación de vacaciones y licencia por enfermedad.

5.2 Kelly, su Cónyuge y la Sociedad Legal de Gananciales se comprometen a no demandar, reclamar, gestionar, promover, tramitar o participar en acción judicial, extrajudicial o administrativa alguna contra la COMPAÑÍA y las demás Partes Relevadas que estén relacionadas a la relación de empleo y a la terminación de esa relación, excepto aquellas que sean necesarias para hacer valer los términos de éste Acuerdo. Si incumplen con esta sección se comprometen a resarcir y/o pagar y/o compensar a la parte demandada por todas las costas, gastos y honorarios de abogados que incurra en su defensa. Además, la COMPAÑÍA tendrá derecho a ser resarcida por la cantidad total de dinero que haya pagado con relación a este Acuerdo, en la medida que ello sea conforme a derecho.

5.3 Kelly reconoce que nada se le adeuda por concepto de salarios, compensaciones, beneficios, licencias o por cualquier otro concepto, incluyendo, pero sin limitación, su participación en cualquier tipo de plan o incentivo, incluyendo, pero sin limitación, planes para ejecutivos, planes de profit sharing, planes de acciones o de stock option y/o cualquier otro plan de beneficios que aplique; y reconoce y afirma que todos sus haberes en la Compañía se le han pagado y liquidado a su entera conformidad. Kelly también reconoce que no tiene derecho a compensación por concepto de mesada bajo la Ley 80 de 30 de mayo de 1976 ya que la terminación de empleo fue por justa causa. Además, reconoce que la suma de dinero antes mencionada excede cualquier cantidad de dinero a la que tendría derecho bajo las políticas, procedimientos, programas de beneficios de la COMPAÑÍA o cualquier contrato verbal o escrito entre las partes de este Acuerdo.



6. Kelly reconoce y acepta voluntariamente que durante su empleo y la terminación de empleo con la COMPAÑÍA o las corporaciones nunca fue objeto de discrimen, represalias, hostigamiento o daño alguno, incluyendo, pero sin limitarse a, discrimen por razón de edad, raza, color, sexo, origen social o nacional, condición social, afiliación política, ideas políticas o religiosas, matrimonio, incapacidad, información o condición genética, orientación sexual e identidad de género, discrimen genético, por ser víctima o ser percibido como víctima de violencia doméstica, agresión sexual o acecho, actividades sindicales o por delación ("whistlewlower") o dar información a agencias regulatorias o cualquier entidad gubernamental estatal o federal; y tampoco fue objeto de represalias de tipo alguno, y que sus dependientes, hijos, familiares, herederos, albaceas, cesionarios, apoderados, amigos o relacionados, no han sufrido daño alguno que pueda ser imputado a las Partes Relevadas, por ninguna razón, incluyendo, sin limitarse, por su relación de empleo con la Compañía, la terminación de la relación de empleo o cualquier evento, acto u omisión ocurrido durante su empleo o posteriormente, y se compromete a testificar lo anterior en cualquier foro.

La Sra. Emilia Castro Castillo por propio y personal conocimiento reconoce y declara que no ha sufrido daño alguno por parte de las Partes Relevadas, por ninguna razón,

incluyendo, pero sin limitarse, por la relación de empleo de Kelly con la Compañía, la terminación de la relación de empleo o cualquier evento, acto u omisión ocurrido durante su empleo o posteriormente, y que su cónyuge, dependientes, hijos, familiares, herederos, albaceas, cesionarios, apoderados, amigos o relacionados, no han sufrido daño alguno que pueda ser imputado a las Partes Relevadas, por ninguna razón, incluyendo, sin limitarse, por la relación de empleo de Kelly con la Compañía, la terminación de la relación de empleo o cualquier evento, acto u omisión ocurrido durante su empleo o posteriormente, y se compromete a testificar lo anterior en cualquier foro.

8. Kelly acuerda cooperar con la Compañía o cualquiera de las Corporaciones, sus directores y ejecutivos en relación con cualquier litigio, reclamación o disputa pendiente o radicada posteriormente que se relacione con asuntos de su conocimiento o responsabilidad durante su empleo con la Compañía. Kelly también acuerda reunirse con representantes de la Compañía o las corporaciones, sus abogados o cualquier persona designada por ellos en lugares y tiempo mutuamente convenientes con respecto a cualquier asunto mencionado en este inciso y, además, se compromete a declarar la verdad ante cualquier tribunal, agencia o cuerpo adjudicativo.

9. **Confidencialidad, Propiedad Intelectual y No Difamación.**



9.1 Kelly, su cónyuge y la sociedad legal de gananciales constituida entre ellos, reconocen y aceptan que el contenido de este documento es de carácter confidencial y se comprometen a no revelar, ni divulgar los acuerdos contenidos en el mismo, excepto a su representantes legales y asesores financieros o económicos, los que también deberán observar el carácter confidencial de este documento.

9.2 Este Acuerdo, el hecho de su existencia, los términos o condiciones aquí incluidos, las negociaciones y los procedimientos relacionados, no podrán ser ofrecido o aceptado como evidencia por Kelly y su cónyuge, ni en modo alguno podrán aludir a los mismos, en acción o procedimiento ante cualquier foro, para propósito alguno, que no fuere el de hacer valer las disposiciones de este Acuerdo, u orden o decisión alguna emitida al amparo de éste. Disponiéndose, que podrán revelar los términos de este Acuerdo en las siguientes situaciones: (a) según lo requiera cualquier agencia gubernamental con autoridad para emitir citaciones (subpoena power); (b) según se requiera por orden judicial; (c) a sus contables y abogados según esto sea necesario para propósitos legales, contributivos, de contabilidad, o (d) para cumplir con los términos del propio Acuerdo y/o para hacer valer el cumplimiento del mismo.

9.3 Kelly reconoce y acuerda que cualquier información confidencial, privada o propietaria obtenida durante su empleo con la COMPAÑÍA, incluyendo la que haya obtenido de cualquiera de las corporaciones, le fue comunicada única y exclusivamente para ser usada para propósitos de las labores y los servicios que rindió. Kelly reconoce que es condición esencial de este Acuerdo no usar o divulgar dicha información a la cual tuvo acceso o adquirió como resultado de la relación de empleo, independientemente de la fuente de esa información o su naturaleza incluyendo información regulatoria, financiera y/o contributiva, lista de clientes o

clientes potenciales, lista de precios, lista de costos, manuales de operaciones, auditorías, técnicas de promoción y/o publicidad y/o mercadeo, procesos, programas, productos o negocios nuevos, proyectos futuros, estrategias de negocio o legales, pasados o presentes acuerdos y negociaciones con clientes, contratistas y suplidores, información sobre ó relacionada con la Junta de Directores de la Compañía y sus accionistas, y toda otra dicha información de la cual advino en contacto durante el curso de su empleo con la Compañía. Así mismo Kelly reconoce que todo trabajo o creación intelectual que originó o creó durante su empleo con la Compañía es propiedad de la Compañía o las Corporaciones. Cualquier acuerdo sobre propiedad intelectual y de confidencialidad que haya suscrito con la Compañía o con las Corporaciones, o que surja de las normas de la Compañía quedará en plena fuerza y efecto después de la terminación de empleo y después de la firma de este acuerdo.

9.4 Kelly, su cónyuge y la sociedad legal de gananciales constituida entre ellos, se comprometen y obligan a no hablar mal o expresar cosas negativas o llevar a cabo cualquier acción que atente contra la reputación y buen nombre de la Compañía y las otras Partes Relevadas, ya sea por sí o a través de terceros, pública o privadamente, a través de cualquier medio, incluyendo el imputar acciones o expresiones de carácter ilegales, inéticas o inmorales a dichas personas.

9.5 Kelly y su cónyuge, ya sea por sí o a través de terceros, se comprometen a no solicitar que empleados de la Compañía renuncien para aceptar empleo con una empresa manufacturera o distribuidora de bebidas alcohólicas en Puerto Rico, como por ejemplo, cervezas, vinos, espíritus destilados y "ready to drink" en cualquier envase como cristal, latas, plástico y "pouch", durante el periodo de seis meses a partir de la fecha de la terminación de empleo de Kelly.

9.6 Kelly, su cónyuge y la sociedad legal de gananciales constituida entre ellos, aceptan y reconocen que el incumplimiento de los compromisos y obligaciones contraídos en este Párrafo 9 causará perjuicios, pérdidas y daños inmediatos e irreparables a la Compañía o el resto de la(s) Parte(s) Relevada(s) afectada(s), los cuales no se pueden estimar con facilidad. Por lo tanto, si Kelly, y/o su cónyuge y/o la sociedad legal de gananciales constituida entre ellos, por si, o a través de un tercero incumpliesen o tratasen de incumplir estos compromisos y obligaciones, compensarán a la Compañía y a la(s) Parte(s) Relevada(s) afectada(s) por cualquier daño (por cada violación a cada parte afectada) que cause dicho incumplimiento, según lo determine un tribunal así como por los gastos de la Compañía y las Partes Relevadas en dichos pleitos incluyendo los honorarios y otros costos legales. Además, podrán reclamar los derechos y remedios que procedan incluyendo, pero sin limitación, una orden de entredicho provisional, injunction preliminar e injunction permanente.

10. **Interpretación.** Los términos de este Acuerdo serán interpretados conforme a las leyes del Estado Libre Asociado de Puerto Rico.

**Cosa Juzgada.** Este Acuerdo se tendrá como una adjudicación en los méritos y tendrá el efecto de cosa juzgada.

7 de 10

12. **Totalidad del Acuerdo y Modificaciones.** Las partes reconocen que este Acuerdo contiene todas y cada una de las obligaciones y responsabilidades de las partes. Además, las partes acuerdan que toda modificación al mismo tendrá que ser por mutuo acuerdo y por escrito para que adquieran efectividad.

13. **Voluntad de las Partes.** Kelly y su cónyuge reconocen, representan y aseguran los siguientes hechos:



A. que han leído este Acuerdo en su totalidad y entendido el lenguaje utilizado en el mismo;

B. que se les ha aconsejado que debe consultar con su asesor legal en cuanto a los términos y condiciones de este Acuerdo; y que, de hecho lo han consultado;

C. que la Compañía no les ha asesorado o aconsejado legal o contributivamente;

D. que tienen pleno conocimiento de las consecuencias legales que implica suscribir este Acuerdo;

E. que han entendido que mediante este Acuerdo no están renunciando a alguna reclamación basada en hechos ocurridos con posterioridad a la firma de este Acuerdo;

F. que han entendido que mediante este Acuerdo renuncian, entre otros, a los derechos y reclamaciones que pueda tener por discrimen por edad en el empleo bajo las disposiciones de la Ley Núm. 100 del 30 de junio de 1959, el Age Discrimination in Employment Act (ADEA), y el Older Workers Benefit Protection Act (OWBPA), 29 U.S.C. §§ 621-634;

G. que han recibido como contraprestación, bienes con valor más alto a los que tengan o pudiesen tener derecho;

H. que es su intención libre y voluntaria de firmar y cumplir este Acuerdo a cabalidad;

I. que este Acuerdo incorpora fielmente los acuerdos habidos entre las partes;

J. que se les ha informado que tienen veintiún (21) días calendario para decidir si firmarán o no este Acuerdo;



K. que se les ha informado que Kelly cuenta con un término de siete (7) días calendario contados a partir de la fecha de la firma de este Acuerdo para revocar su consentimiento, revocación para cuya validez será necesaria una notificación a la mano con acuse de recibo, antes de expirar el referido término, dirigida a la Sra. Maribel Montes, a la siguiente dirección: 100 Boulevard Alfonso Valdés, Mayagüez, P.R. 00681. Transcurrido el plazo de siete (7) días sin que Kelly notifique en dicha forma la revocación de su consentimiento, este Acuerdo

advendrá final, firme y ejecutable.

14. Kelly garantiza y afirma que, antes de la fecha de efectividad de este Acuerdo, ha devuelto a la posesión, custodia y control exclusivo de la Compañía, toda propiedad de la Compañía, incluyendo pero sin limitación todo documento y comunicaciones, físicas o electrónicas, creadas, enviadas o recibidas en el curso del empleo con la Compañía, grabaciones, información o data computarizada y sus respectivas copias y reproducciones, "printouts", datos, informes, correspondencia, memorandos, fórmulas, formulaciones, presupuestos, planes promocionales, planes de mercado, información de mercado y datos financieros de cualquier tipo o naturaleza, y que ya no retiene ninguno de éstos en su posesión, custodia o control.

15. **Fecha del Acuerdo.** Este Acuerdo podrá ser suscrito en fechas diferentes, sin que ello afecte su validez. Se entenderá como la fecha del otorgamiento, el día en que ambas partes lo hayan suscrito.

**EN MÉRITO DE LO ANTES EXPUESTO**, las partes otorgan el presente documento en muestra de su conformidad con todo lo antes mencionado y para que así conste, las partes aquí comparecientes firman el presente documento.

En Mayagüez, Puerto Rico.

**EMPLEADO:**

_____
Carlos Kelly

_____
Emilia Castro Castillo
Cónyuge

_____   2/10/2015
                                   Fecha



Affidávit Núm. 3914.

Suscrito ante mí por Carlos Kelly y su cónyuge, Emilia Castro Castillo, de las circunstancias personales antes descritas, a quienes he identificado mediante su licencia de conducir vehículos de motor número 1974504, respectivamente, con su foto y firma, expedida por el Estado Libre Asociado de Puerto Rico. Licencia 1886060

En Mayagüez, Puerto Rico, hoy 10 de febrero de 2015.

9 de 10

COMPAÑIA

_____
Maribel Montes
Gerente de Finanzas



